UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ANTTONIO J. ROLLINS,

    Petitioner,                                    Case No. 16-11341

v.

STEVEN RIVARD,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Anttonio J. Rollins, ("Petitioner"), currently incarcerated at the Thumb Correctional Facility in Lapeer, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction of assault with intent to commit murder under Mich. Comp. Laws § 750.83 and possession of a firearm in the commission of a felony under Mich. Comp. Laws § 750.227b. (Dkt. # 1.) For the reasons that follow, court will deny the petition.

**I. Background**

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. The court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

This case arises out of a shooting in Detroit, Michigan, on the evening of September 7, 2012. At approximately 11:00 p.m., the victim, Robert Monroe, was working as a pizza delivery man. He received an order to deliver to the home of his step-mother's sister, Samari Blakely (the victim's aunt). After arriving at his aunt's house, the victim parked his car in the street, went to the door, and knocked. He heard a voice behind him call his nickname, "LB." The victim turned and saw a black Grand Prix parked on the street. He approached the Grand Prix. Defendant was in the front passenger seat, which was next to the curb, and had rolled down his window. The victim knew defendant, who was a distant relative, by defendant's nickname, "J Rock." The victim had seen defendant at family gatherings in the past. Although he had no problem with defendant, the victim's sisters, Autumn Blakely and Renee Monroe, had unspecified issues with defendant.[1] Two other men were in the Grand Prix with defendant – one in the driver's seat and another in the rear passenger seat. The victim approached defendant, who was still seated in the Grand Prix, and they shook hands. The victim spoke briefly with the man in the backseat.

Suddenly, while the victim was standing about three feet from the Grand Prix, gunshots were fired from the area of defendant's seat. Although he never saw a gun, the victim saw sparks from the gunshots and felt bullets strike him in the stomach and lower chest. He was shot again in the back as he fled. He was positive defendant was the person who shot him. Uncertain whether he could trust his aunt – having just been shot in front of her home – the victim went to a nearby liquor store and asked the employees to call an ambulance. The police arrived and transported to victim to the hospital, where he underwent surgery. As discussed *infra*, there was conflicting evidence about how many times the victim was shot, and whether he was actually shot in the back, but one bullet retrieved from his body was admitted into evidence at trial and the victim testified that two bullets remained inside him.

On September 16, 2014, Sergeant Terence Sims of the Detroit Police Department tried to interview the victim in the hospital, but he ordered Sergeant Sims to leave. According to the victim, he did so because he did not feel well enough to talk and had tubes running into his mouth and side. According to Sergeant Sims, the victim was in bad physical shape and became very agitated before ordering Sergeant Sims to leave. Sergeant Sims spoke

---

[1] When the victim testified that his sisters had issues with defendant, defense counsel objected on grounds that the testimony was speculative, irrelevant, and derived from hearsay. The trial court overruled the objection, but it instructed the victim not to testify about the nature of the issues his sisters had with defendant, instead limiting his testimony to whether the victim had personal knowledge that such issues existed. (Footnote in original).

2

with the victim's family afterwards and identified defendant as a possible suspect. A week later, Sergeant Richard Seagram came to the hospital, and the victim provided a written statement indicating that "J Rock" was the person who shot him. The victim also identified defendant in a photographic array conducted by Sergeant Seagram.

> At trial, defendant elected not to testify. The parties stipulated to the admission of a police report prepared by Officer Brandolyn Johnson, who was an absent witness endorsed by the prosecution. The report was read into the record, marked as an exhibit, and admitted into evidence. In pertinent part, it stated that, at the liquor store immediately after the victim was shot, he told the police that he had been shot twice, in the upper abdomen and chest – not three times, as his trial testimony, that he was shot in the stomach, chest, and back, would indicate – by "an unknown black male driving a black Grand Prix [.]" The victim's medical records were also admitted into evidence. The medical records indicated that defendant (sic) was "brought in with three entry wounds to the abdomen."
>
> During her closing argument, the prosecutor made several statements to which defendant takes issue on appeal. The prosecutor stated, "Now [the victim]'s honest with you and told you [he] did not have a problem with the defendant." The prosecutor further argued: "[Y]ou will get the medical records of [the victim] who almost died a couple of times. Serious injuries inside. Messed up to the point he has a colostomy bag. This is not a person who would come in here and indicate somebody else did it and let the real shooter–[.]" Defendant objected after this statement, arguing that the prosecutor was vouching for the credibility of the witness. The trial court agreed and stated, "you can't do that." Finally, the prosecutor stated:
>
>> Now the victim is on that stand talking to you. No he is not a professional witness. He's not rehearsed. What you see is what you got [sic]. He was genuine. Even when you asked him questions [referring to written questions jurors submitted that were approved by counsel before the victim answered them,] he turned around and looked at you and said naw, I didn't say that, whatever, whatever. Kind of slouched in the chair. He's just talking. He's telling you what happened to him, simple as that.
>
> The trial court instructed the jury that the attorneys' arguments and statements were not evidence to be considered in deciding the case and that it was free to determine the credibility of the witnesses.

3

*People v. Rollins*, No. 321488, 2015 WL 5314292, at *1–2 (Mich. Ct. App. Sept. 10, 2015). Petitioner's conviction was affirmed on appeal. *Id.; leave to appeal den. at* 876 N.W.2d 562 (Mich. 2016).

## II. Standard of Review

28 U.S.C. section 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996, imposes the following standard of review:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as

4

'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III. Discussion

Petitioner relies on four grounds that he argues entitle him to relief: (1) that there was insufficient evidence to support his conviction; (2) that the government prosecutor made improper statements during closing arguments; (3) that he received ineffective assistance of counsel; and (4) that the government prosecutor improperly failed to correct known false testimony. (Dkt. # 1.)

### A. Sufficiency of the evidence

Petitioner first argues that there was insufficient evidence to establish his identity as the shooter, because the victim never actually saw a gun and thus the prosecutor was unable to prove that Petitioner, as opposed to one of the two other men in the car, was the shooter. The Michigan Court of Appeals rejected Petitioner's claim:

> The victim was delivering pizzas when he was called over to a parked car and shot several times. It is undisputed that he was shot – one bullet was recovered from his body and introduced into evidence at trial – and he saw sparks emanate from defendant's seat in the parked car, which supports a reasonable inference that defendant was the shooter. Though

> two other men were in the parked car with defendant, the victim testified that he was certain that it was defendant who shot him. Finally, the victim testified that he knew defendant, who had unspecified issues with the victim's sisters, which, contrary to defendant's assertion, supports a reasonable inference that defendant had a motive to shoot the victim. Thus, notwithstanding the fact that the victim never saw defendant with a gun, a rational trier of fact could reasonably infer that defendant possessed a gun and used it to shoot the victim. Moreover, while defendant claims that there was no proof of the specific type of gun (.38 caliber or 9mm); however (sic), as discussed *infra*, that is not an element of either offense.
>
> Defendant also argues that the most reasonable inference from the evidence was that the driver fired the shots. However, this Court will not replace its judgment for that of the fact-finder regarding what inferences can be fairly drawn from the evidence. This Court views the evidence in the light most favorable to the prosecution, and must draw all reasonable inferences in favor of the jury's verdict convicting defendant of AWIM and felony-firearm. Since it was reasonable for the jury to infer that defendant possessed a gun and used it to shoot the victim, no further review is necessary or appropriate.

*Rollins*, 2015 WL 5314292, at * 3 (internal citations omitted).

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not re-weigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 Fed. App'x. 147, 150 (6th Cir. 2003) (citing *People v.*

*Turrell*, 25 Mich.App. 646, 181 N.W.2d 655, 656 (1970)). Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub,* 194 F. Supp.2d 629, 648 (E.D. Mich. 2002) (Friedman, J.). Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations omitted).

In the present case, there was strong circumstantial evidence showing that Petitioner was the shooter. Although he did not actually see a gun, the victim testified that gunshots were fired from the area of Petitioner's seat, that he saw sparks from the gunshots, and that he was positive Petitioner was the shooter. The victim testified that he felt bullets strike him in the stomach and lower chest and that he was shot again as he fled. The victim also indicated that Petitioner had an unspecified conflict with his sisters. Given all of this circumstantial evidence, the Michigan Court of Appeals did not unreasonably apply *Jackson* in rejecting Petitioner's sufficiency of evidence claim. *See Moreland v. Bradshaw,* 699 F.3d 908, 919-21 (6th Cir. 2012).

### B. Prosecutorial Misconduct

Petitioner argues in his second and fourth claims that he was denied a fair trial because of prosecutorial misconduct.[2] In the Sixth Circuit, "[c]laims of prosecutorial

---

[2] Respondent argues that Petitioner's prosecutorial misconduct claims are barred by procedural default because he failed to object at trial. Petitioner alleges in his third claim that trial counsel was ineffective for failing to object. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Because the court concludes that Petitioner's ineffective assistence of counsel claim fails on the merits, petitioner's prosecutorial conduct claims are also barred by procedural default. *See Cameron v. Birkett,* 348 F. Supp.2d 825, 836 (E.D. Mich. 2004) (Gadola, J.).

misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (quoting *Harrington*, 562 U.S. at 103).

In his second claim, Petitioner argues that the prosecutor improperly vouched for the victim's credibility in her closing argument. A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Petitioner points to three different comments from the prosecutor that he claims were improper:

> (1) "Now [the victim]'s honest with you and told you [he] did not have a problem with the defendant."
>
> (2) "[Y]ou will get the medical records of [the victim] who almost died a couple of times. Serious injuries inside. Messed up to the point he has a colostomy bag. This is not a person who would come in here and indicate somebody else did it and let the real shooter–[defense objection.]"
>
> (3) "Now the victim is on that stand talking to you. No he is not a professional witness. He's not rehearsed. What you see is what you got [sic]. He was genuine. Even when you asked him questions [referring to

9

> written questions jurors submitted that were approved by counsel before the victim answered them,] he turned around and looked at you and said naw, I didn't say that, whatever, whatever. Kind of slouched in the chair. He's just talking. He's telling you what happened to him, simple as that."

The Michigan Court of Appeals rejected Petitioner's claim:

> In any event, the prosecution's comments were proper. Viewed in their proper context, the comments did not suggest that the prosecutor had special knowledge of the victim's credibility. The various comments summarized the victim's testimony and argued that he should be believed based on the facts of the case, which is permissible . . . . Likewise, the comments were proper because they were made during closing arguments about a prosecution witness whose credibility was vitally important to determining guilt or innocence – his testimony was the only evidence that defendant was the shooter.
>
> Finally, even if the comments defendant cites did improperly suggest that the prosecutor had special knowledge regarding the victim's credibility, reversal is nevertheless unwarranted. The trial court properly instructed the jury that counsel's arguments and statements were not evidence to be considered in deciding the case, and also properly instructed the jury that it was free to determine the credibility of the witnesses, thereby remedying any prejudice defendant might have suffered.

*Rollins*, 2015 WL 5314292, at *4 (internal citations and quotations omitted).

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999) (internal citations omitted). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness'

credibility. *United States v. Causey*, 834 F.2d1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted); *See also Griffin v. Berghuis,* 298 F. Supp.2d 663, 674-75 (E.D. Mich. 2004) (Lawson, J.). Notably, the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d 486, 537 and n. 43 (6th Cir. 2000). Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief in a witness' credibility must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

      The prosecutor's comments about the victim did not amount to improper vouching because the prosecutor was merely noting the consistency between his testimony and other evidence and emphasizing that the victim had no reason to lie. *See United States v. Jackson,* 473 F.3d 660, 672 (6th Cir. 2007); *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006). When viewed in context, the prosecutor's comments were based on the record evidence and not on her personal belief concerning the evidence. The prosecutor did not assert or imply that she had any special knowledge apart from the record evidence to believe that Petitioner was guilty or that the victim was testifying truthfully. Petitioner has thus failed to show that the prosecutor engaged in improper vouching that would entitle him to habeas relief. *See Alder v. Burt,* 240 F. Supp.2d 651, 669 (E.D. Mich. 2003) (Gadola, J.).

Moreover, even if these isolated incidents could be construed as vouching, they were only a scant component of a thirteen page closing argument and rebuttal which summarized the evidence. (Dkt. # 8-7, Pg. ID 486-92, 497-502.) In this case, any alleged vouching for the credibility of witnesses did not rise to the level of a due process violation in light of the fact that the jury was informed by the judge that the prosecutor's arguments were not evidence and the judge instructed the jury as to the factors to consider in evaluating the credibility of the witnesses' testimony. (*Id.* at Pg. ID 505-08.) See *Byrd,* 209 F.3d at 537-38.

In his fourth claim, Petitioner alleges that the prosecutor knowingly allowed the victim to commit perjury by testifying falsely that Petitioner shot him in the back when the victim's medical records did not show that the victim had been shot in the back. The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd*, 209 F.3d at 517-18. A habeas petition should be granted if perjury by a

12

government witness undermines the confidence in the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 678 (1985). However, mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F.3d at 343. The fact that a witness contradicts himself or changes his story does not establish perjury. *Malcum v. Burt,* 276 F. Supp.2d 664, 684 (E.D. Mich. 2003) (Lawson, J.) (citing *Monroe v. Smith*, 197 F. Supp.2d 753, 762 (E.D. Mich. 2001) (Tarnow, J.)).

Petitioner is not entitled to relief on his claim for several reasons. First, Petitioner presented no evidence that the victim *lied,* as opposed to being mistaken, about exactly how he was shot. The victim recounted that he had been shot twice in his abdomen and was attempting to flee for his life when shot again. That the medical records apparently show that there were three entry wounds in the abdomen does not demonstrate the existence of an intentional lie on his part. Under circumstances such as these, a shooting victim cannot be expected to double as a medical expert to explain the location of each bullet entry wound. For example, if there were a dorsal exit wound from a ventral entry wound, a possibility that the record does not apparently disclose, a victim could understandably come to a conclusion that he had been shot at the location of the exit wound, i.e., in the back. In any event, an allegation of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir. 1971). Petitioner has presented no evidence that the victim intentionally testified falsely about being shot in the back.

More importantly, even if the true location of the final entry wound were clearly known to the victim but intentionally falsified, would it make any difference from the

13

perspective of the finder of fact? No. As the Michigan Court of Appeals explained in its opinion, *Rollins*, 2015 WL 5314292, at * 6, whether Petitioner was shot in the back or the front was immaterial to the question of his culpability for assault with intent to murder. Under Michigan law, the elements of assault with intent to commit murder in Michigan are: (1) an assault; (2) with an actual intent to kill; (3) which if successful, would make the killing murder. *See Steele v. Withrow,* 157 F. Supp.2d 734, 740 (E.D. Mich. 2001) (Duggan, J.) (*citing People v. Hoffman*, 570 N.W.2d 146, 150 (Mich. Ct. App. 1997)). The fact that Petitioner intentionally pointed his loaded firearm at the victim at close range, aimed in his direction, and fired several shots was sufficient evidence from which a reasonable factfinder could conclude beyond a reasonable doubt that Petitioner actually intended to kill the victim. *See Johnigan v. Elo,* 207 F. Supp.2d 599, 608 (E.D. Mich. 2002) (Steeh, J.). The exact location of one of the three bullet wounds was not material to Petitioner's conviction, thus, he is not entitled to habeas relief on his perjury claim. *See e.g. Rosencrantz v. Lafler,* 568 F.3d 577, 588 (6th Cir. 2009) (holding a prosecutor's failure to correct victim's material testimony that she had not met with prosecutors prior to her testimony at defendant's trial for sexual assault was "harmless error" – uncorrected testimony would likely fail to substantially influence jury's verdict given victim's uncontradicted testimony about assailant's tattoo). Petitioner is not entitled to relief on his fourth claim.

### C. Ineffective Assistance of Counsel

Finally, Petitioner argues in his third claim that trial counsel was ineffective for failing to object to the prosecutorial misconduct that he alleged in his second and fourth claims. To show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Id.* at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel – not the state – to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper statements, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the

15

prosecutor's comments did not deprive Petitioner of a fundamentally fair trial, Petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley,* 457 F.3d 501, 528 (6th Cir. 2006). Petitioner has also failed to show that the victim committed perjury, thus, counsel was not ineffective for failing to challenge the victim's testimony on the ground that it was perjured. *Brown v. Burt*, 65 Fed. App'x. 939, 942 (6th Cir. 2003). Accordingly, Petitioner is not entitled to habeas relief on his third claim.

### C. Certificate of Appealability.

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits of the claim. *Id.* at 336–37. Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court will deny Petitioner a certificate of appealability.

The standard for granting an application for leave to proceed *in forma pauperis* is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D.Mich. 2002)(Rosen, J.). Whereas a certificate of appealability may be granted only if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant leave to proceed *in forma pauperis* if it finds that an appeal is being taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a); *Foster*, 208 F. Supp.2d at 764–65. "Good faith" requires a showing that the issues raised are not frivolous – it does not require a showing of probable success on the merits. *Id.* at 765. Although this is a decidedly lower standard, the court will nonetheless deny leave to proceed *in forma pauperis* on appeal because appeal would be frivolous for the reasons stated above.

## IV. CONCLUSION

IT IS ORDERED that Petitioner Antonnio J. Rollins' petition for writ of habeas corpus [Dkt. # 1] is DENIED.

IT IS FURTHER ORDERED that leave to proceed in forma pauperis on appeal is DENIED.

The court DECLINES to issue a certificate of appealability.

s/ Robert H. Cleland<br>
ROBERT H. CLELAND<br>
UNITED STATES DISTRICT JUDGE

Dated: December 6, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 6, 2016, by electronic and/or ordinary mail.

                 s/ Lisa Wagner
                 Case Manager and Deputy Clerk
                 (313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\16-11341.ROLLINS.habeas.2254.denial.tlh.wpd